FILED
**United States Court of Appeals
Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 7, 2026**

**Christopher M. Wolpert
Clerk of Court**

CYNTHIA LAKEY; DOUGLAS LAKEY,
as co-Special Administrators for the Estate
of Jared Lakey,

     Plaintiffs - Appellants,

v.

CHRIS BRYANT, in his official and
individual capacities as Sheriff of Carter
County,

     Defendant - Appellee,

and

JOSHUA TAYLOR, in his individual
capacity; BRANDON DINGMAN, in his
individual capacity,

     Defendants.

No. 25-7068

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:20-CV-00152-RAW)**
_____

Steven J. Terrill, Bryan & Terrill, Edmond, Oklahoma (J. Spencer Bryan with him on the briefs), for Plaintiffs-Appellants.

Rebecca A. Boyer, Collins Zorn & Wagner, PLLC, Oklahoma City, Oklahoma (Wellon B. Poe, and Jamison C. Whitson, with her on the brief), for Defendant-Appellee.
_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

After Jared Lakey was seen screaming naked on a residential street in Wilson, Oklahoma, officers from the Wilson Police Department responded to the scene. The Wilson officers tased Mr. Lakey fifty-three times in a nine-minute period and an assisting deputy, David Duggan from the Carter County Sheriff's Office ("CCSO"), placed Mr. Lakey in a chokehold restraint. Deputy Duggan acted pursuant to a Mutual Aid Policy, which required CCSO officers to respond to calls for assistance from smaller law enforcement agencies like the Wilson Police Department. The multiple tasings and neck restraint ultimately led to Mr. Lakey's death. Plaintiffs-Appellants Douglas and Cynthia Lakey, as administrators for Mr. Lakey's estate (the "Estate"), filed suit under 42 U.S.C. § 1983, alleging various constitutional violations by individual officers and municipal entities.

As relevant to this appeal, the Estate alleged that Defendant-Appellee Sheriff Chris Bryant of the CCSO was liable in his individual and official capacities for (1) maintaining an informal custom of permitting his officers to use excessive force; (2) maintaining the Mutual Aid Policy, which it argues increased the risk of excessive force being used against arrestees; and (3) failing to train officers how to respond to requests for assistance under the Mutual Aid Policy. After Sherrif Bryant received notice of the litigation, his cell phone containing certain texts from the night of the incident was destroyed. And Sheriff Bryant then threw the broken phone away, preventing retrieval of

2

the messages. The Estate filed a motion for spoliation sanctions under Federal Rule of Civil Procedure 37(e), which the district court denied. The court concluded that the Estate had failed to show it was prejudiced by the lost texts and made a factual finding that Sheriff Bryant had not destroyed the evidence in bad faith.

Sheriff Bryant then filed separate motions for summary judgment, which the district court granted in part. The court concluded that Sheriff Bryant in his individual capacity was entitled to qualified immunity for the Mutual Aid Policy, noting that the Estate had failed to show maintaining the policy violated clearly established law. But it allowed the Mutual Aid Policy claims to go to trial against Sheriff Bryant in his official capacity. As to the claim alleging a custom of allowing excessive force, the court granted summary judgment. The court determined there was no evidence of a pattern of excessive force violations sufficient to show an informal custom.

At trial, the jury considered claims that the individual Wilson officers were liable for using excessive force under the Fourth Amendment and claims that Sheriff Bryant was liable in his official capacity for maintaining and for inadequate training under the Mutual Aid Policy. On the first day of testimony, the Estate sought to introduce evidence that, although the Wilson officers had been criminally charged for Mr. Lakey's death, Deputy Duggan was not criminally charged for his part in the incident. But the court excluded the evidence under Federal Rule of Evidence 403, stating without explanation that the prejudicial effect of the evidence substantially outweighed its probative value. The jury ultimately found the individual Wilson officers liable for excessive force but found that Sheriff Bryant was not liable for the Mutual Aid Policy.

On appeal, the Estate raises four arguments. First, it argues that the district court erred in holding Sheriff Bryant was entitled to qualified immunity for maintaining the Mutual Aid Policy. Second, the Estate argues the district court erred by granting summary judgment in favor of Sheriff Bryant on its claim alleging a custom of allowing excessive force. Third, the Estate contends that the district court erred in excluding evidence that Deputy Duggan was not criminally charged for his part in Mr. Lakey's death. Finally, the Estate argues that the district court erred in denying its Rule 37(e) motion for spoliation sanctions because it erroneously placed the entire burden of proving prejudice on the Estate and improperly weighed the evidence to determine that Sheriff Bryant destroyed his text messages negligently as opposed to intentionally.

For the reasons explained below, we see no basis for reversal. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore affirm the judgment of the district court.

## I.   BACKGROUND

### A.   *Factual Background*

**1.   The Mutual Aid Policy**

As sheriff of Carter County, Chris Bryant adopted and enforced a Mutual Aid Policy, requiring deputies in the CCSO to respond when smaller municipal agencies requested assistance. The Mutual Aid Policy provides that "[r]equests from other law enforcement agencies . . . for back-up personnel or other assistance will be honored by the Carter County Sheriff's Office whenever the request is of an urgent nature and in non-emergency cases when available manpower exists." App. Vol. II at 438.

Deputies from the CCSO began responding to calls for assistance following enactment of the Mutual Aid Policy. But CCSO deputies soon found that some local officers would not assist them when they responded to calls for mutual aid. CCSO Deputy Billy Mitchell testified that he felt he was "on [his] own" when responding to calls from certain Wilson Police Department officers under the Mutual Aid Policy. App. Vol. II at 403. Sheriff Bryant testified that he was aware some Wilson officers were not providing backup, and he was aware that this lack of backup increased the risk to his deputies and arrestees. However, because the Wilson officers were not his employees, Sheriff Bryant did not contact the Wilson chief of police to correct this problem.

## 2.    The Incident

On July 4, 2019, Jared Lakey was spending the weekend with his friend Kody Helms in Wilson, Oklahoma. After attending a Fourth of July celebration, Mr. Lakey left with other friends before returning to Mr. Helms's home. When Mr. Helms returned home later that night, Mr. Lakey was half-dressed and appeared to be in an agitated state. In response to Mr. Helms's direction that Mr. Lakey either calm down or leave, Mr. Lakey left the residence.

Neighbors heard a commotion outside the residence and noticed Mr. Lakey, half-naked, screaming incoherently in the street. The neighbors called the Wilson Police Department. Wilson Police Officer Joshua Taylor arrived at the scene and encountered a fully naked man, except for socks, standing in the middle of the street, waving his arms, and acting in a manner Officer Taylor associated with possible drug use. Officer Taylor called for backup, to which Wilson Police Officer Brandon Dingman responded. When

Officer Dingman arrived, Mr. Lakey was lying face down on the ground with Officer Taylor pointing his taser at Mr. Lakey from a few feet away.

According to Officers Dingman and Taylor, Officer Dingman approached Mr. Lakey to handcuff him. When Officer Dingman placed a foot on Mr. Lakey's back to stabilize him, Mr. Lakey began to rise. Both Officers Taylor and Dingman activated their tasers. While this was ongoing, Officer Dingman radioed for additional backup. The call triggered the Mutual Aid Policy, and CCSO Deputy David Duggan responded. While waiting for Deputy Duggan to arrive, Officers Taylor and Dingman never attempted to handcuff Mr. Lakey, opting instead to keep him on the ground using their tasers. Over a roughly nine-minute period, Officers Taylor and Dingman tased Mr. Lakey fifty-three times.

When Deputy Duggan arrived at the scene, Officers Dingman and Taylor were standing away from Mr. Lakey, and Mr. Lakey was sitting on the ground. Mr. Lakey was not resisting, fighting, or making any threatening gestures. Without issuing any commands, Deputy Duggan approached Mr. Lakey from behind and placed him in a Lateral Vascular Neck Restraint ("LVNR"). The LVNR is designed to put pressure on carotid arteries, thereby cutting off oxygen flow and causing the individual to pass out. Deputy Duggan applied the LVNR until Mr. Lakey passed out, at which point the officers placed Mr. Lakey in handcuffs.

Deputy Duggan testified that he used the LVNR because he feared that Officers Taylor and Dingman "were not going to help when [he] went hands on, and due to the size of Mr. Lakey," not because Mr. Lakey's behavior required such a hold. App. Vol. II

6

at 393–94. Deputy Duggan learned the LVNR during his previous employment as an Oklahoma Highway Patrol Trooper. It is undisputed that the CCSO did not train its deputies to use any type of chokehold or neck restraint, including the LVNR. And before this incident, no deputy had used a neck restraint during Sheriff Bryant's time in office, which began in 2016.

Medical responders were called to the scene where Mr. Lakey was treated before being transferred to University of Oklahoma Medical Center in Oklahoma City. Mr. Lakey passed away at the hospital on July 6, 2019. A medical examiner's autopsy listed Mr. Lakey's cause of death as a heart attack, caused in part by the use of tasers and the neck restraint.

### 3.    The Aftermath

Sheriff Bryant was informed about the incident during the night or early morning of July 4/July 5, 2019, and he responded to the scene as part of the investigation. Sheriff Bryant ordered Deputy Duggan to go to a hospital to get a drug and alcohol screening, and Deputy Mitchell accompanied Deputy Duggan to the hospital. During this time, Sheriff Bryant's phone records show that he and Deputy Mitchell exchanged several text messages.

After the investigation revealed the extent of Deputy Duggan's involvement, Sheriff Bryant turned the case over to the Oklahoma State Bureau of Investigation. That same day, Deputy Duggan was placed on administrative leave pending resolution of the investigation.

On June 29, 2020, Deputy Duggan met with the district attorney, who requested Deputy Duggan's resignation in lieu of the district attorney's office filing criminal charges against him. Text messages between Deputy Duggan and someone named "Gary" in the days after the meeting show Deputy Duggan recounting to Gary that Sheriff Bryant disagreed with his being pressured to resign, that Sheriff Bryant was "behind" him, and that Sheriff Bryant was "pissed." App. Vol. II at 364–65. Deputy Duggan resigned from the CCSO effective July 2, 2020.

The district attorney brought criminal charges against Officers Taylor and Dingman for murder in the second degree. Both were found guilty by a jury and convicted in November 2021. However, Sheriff Bryant did not discipline Deputy Duggan, and he was not criminally charged. Deputy Duggan claimed no one told him that the LVNR violated the CCSO's use of force policy and that he believed the LVNR was an approved use of force technique. Sheriff Bryant did not make any changes to CCSO's written policies as the result of the incident with Mr. Lakey.

During litigation, Sheriff Bryant reported that his cell phone had been destroyed in January 2020 when it fell onto the road and was run over by another vehicle. Despite having received a preservation letter and a notice of a tort claim, Sheriff Bryant threw away the phone and his SIM card without preserving its contents. Sheriff Bryant had an older model iPhone, which did not automatically backup cloud storage or otherwise save a backup. As a result, the text messages between Sheriff Bryant and Deputy Mitchell immediately after the incident were lost.

8

### B.    Procedural Background

On May 26, 2020, the Estate filed a complaint in the Eastern District of Oklahoma. As relevant to this appeal, the Third Amended Complaint brought claims against Sheriff Bryant in his official and individual capacities. The Estate alleged that Sherriff Bryant was liable for maintaining policies approving the use of excessive force. Throughout the litigation, the Estate developed claims that Sheriff Bryant was liable for maintaining the Mutual Aid Policy and failing to train deputies how to respond under the Mutual Aid Policy.[1]

On February 7, 2023, the Estate filed a motion for spoliation sanctions against Sheriff Bryant based on his missing cell phone and his failure to maintain text messages from the night of the incident. The Estate brought its motion under Federal Rule of Civil Procedure 37(e), which allows the court to impose sanctions on a party who fails to preserve electronically stored information in anticipation of litigation if the failure prejudices another party. *See* Fed. R. Civ. P. 37(e). Specifically, the Estate requested default judgment. Rule 37(e)(2) provides that default judgment is an appropriate remedy

---

[1] Allegations regarding the Mutual Aid Policy do not appear in the operative complaint. Nonetheless, Sheriff Bryant does not argue this as a basis to affirm the dismissal of related claims on summary judgment. And official capacity claims based on the Mutual Aid Policy were included in the pretrial order. "When an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings because the pretrial order is the controlling document for trial." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (internal quotation marks omitted). "[T]he inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim." *Id.* We therefore consider the Mutual Aid Policy claims as properly raised.

only "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation."

The district court denied the motion. The court first determined that while Sheriff Bryant had a duty to preserve his cell phone data, the Estate had not shown that the spoliation was prejudicial and that the lost messages would have been favorable to its case. In making this determination, the district court assumed that the party requesting spoliation sanctions under Rule 37(e) has the burden to show prejudice. In addition to its conclusion on prejudice, the court made a factual finding that Sheriff Bryant was merely negligent in destroying his phone and text messages and that he did not intentionally deprive the Estate of evidence.

Sheriff Bryant filed separate motions for summary judgment for the claims against him in his official and individual capacities. The district court entered an order addressing both motions for summary judgment, granting them in part and denying them in part.

The court granted summary judgment for the official capacity claim alleging a policy of allowing excessive force. It determined there was no evidence showing a pattern of excessive force, as required for a jury to find Sheriff Bryant liable for maintaining an informal policy. As to the individual capacity claim, alleging supervisory liability for the Mutual Aid Policy, the court likewise granted the motion for summary judgment, concluding that Sheriff Bryant was entitled to qualified immunity. Specifically, the district court concluded the Estate had failed to present any case law showing the Mutual Aid Policy violated established law and, instead, had presented only cases addressing Deputy Duggan's underlying use of force. However, because qualified

10

immunity does not apply to official capacity claims, the court denied summary judgment for the official capacity claims alleging liability for maintaining and for failure to train under the Mutual Aid Policy.

Twelve days before trial, the parties and the district court held a pretrial conference. At the conference, the court determined it would allow the Estate to present evidence that the district attorney declined to criminally charge Deputy Duggan. Sheriff Bryant filed a motion to reconsider that decision, which the district court denied.

The case was tried before a jury from July 22 through July 28, 2025. The remaining claims heard by the jury were claims against Officers Taylor and Dingman for excessive force, a claim against Sheriff Bryant in his official capacity for deliberate indifference to the risk of excessive force under the Mutual Aid Policy, and a claim against Sheriff Bryant in his official capacity for failure to train under the Mutual Aid Policy.

On the first day of testimony, Sheriff Bryant made an oral motion to reconsider the ruling allowing evidence that Deputy Duggan was not criminally charged. The court again denied the motion. However, after the midmorning break, the court reconsidered its prior ruling and ordered the parties to refrain from eliciting evidence that Deputy Duggan was not criminally charged. As the testimony had progressed, the court stated it had concluded that "the prejudice of that [evidence] substantially outweighs its probative value."

On July 28, 2025, the jury returned a verdict finding Officers Taylor and Dingman liable for excessive force. But the jury found that Sheriff Bryant was not liable for either

of the official capacity claims against him. The court entered judgment the next day, and the Estate timely appealed.

## II.    DISCUSSION

The Estate challenges the district court's summary judgment decision, evidentiary decisions at trial, and the denial of its Rule 37(e) motion for spoliation sanctions. We address each of these arguments, ultimately concluding that the district court did not reversibly err. Our discussion of these issues proceeds in three parts. In Part A, we review the district court's summary judgment decision, first considering whether the district court correctly dismissed the Estate's individual capacity claim against Sheriff Bryant and then addressing the correctness of its decision dismissing the claim for a policy of excessive force against Sheriff Bryant in his official capacity. For the reasons explained below, we affirm both aspects of the summary judgment ruling.

In Part B, we consider whether any evidentiary errors entitle the Estate to a new trial. Specifically, we address the Estate's claim that the district court improperly excluded evidence that Deputy Duggan was not criminally charged for his actions during the incident with Mr. Lakey. Because we conclude that any error was harmless, we reject this argument.

Finally, in Part C, we consider the Estate's claim that the district court reversibly erred in denying sanctions for spoliation of Sheriff Bryant's cell phone evidence. Again, we detect no reversible error. Accordingly, we affirm.

**A.      *The District Court Correctly Granted Summary Judgment to Sheriff Bryant***

"We review the district court's summary judgment decision de novo, applying the same standards as the district court." *Snyder v. Beam Techs., Inc.*, 147 F.4th 1246, 1253 (10th Cir. 2025) (quotation marks omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* The nonmovant must then bring forth "specific facts showing a genuine issue for trial." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quotation marks omitted). "We view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Flores v. Henderson*, 101 F.4th 1185, 1192 (10th Cir. 2024) (internal quotation marks omitted).

Here, the Estate brought claims against Sheriff Bryant in his individual capacity, as well as claims based on his official capacity. Because the legal requirements to prevail on each of these claims are distinct, we analyze them separately.

1.      **The district court correctly held Sheriff Bryant is entitled to qualified immunity on the Estate's individual capacity claims.**

The district court granted summary judgment to Sheriff Bryant in his individual capacity, concluding that he was entitled to qualified immunity. Specifically, the court determined that the Estate failed to cite a controlling Supreme Court or Tenth Circuit case showing that it was clearly established Sheriff Bryant could face supervisory liability for implementing the Mutual Aid Policy. The Estate argues that maintaining the Mutual Aid Policy was such an obvious constitutional violation that no case law is required to meet the clearly established requirement. To provide context for our rejection of the Estate's argument, we begin with an overview of the relevant legal background.

     *a.      Supervisory Liability and Qualified Immunity*

Section 1983 permits imposing liability on a "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which" causes a plaintiff to be deprived of constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Section 1983, however, "does not authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quotation marks omitted).

To impose supervisory liability, a plaintiff "must show an affirmative link between the supervisor and the constitutional violation." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (quotation marks omitted). Establishing this affirmative link requires showing three prongs: "(1) personal involvement, (2) sufficient causal connection, and

14

(3) culpable state of mind." *Dodds*, 614 F.3d at 1195. The state of mind required depends on the constitutional right at issue, *Schneider*, 717 F.3d at 769, but it "can be no less than the *mens rea* required . . . to commit the underlying constitutional violation," *Cox*, 800 F.3d at 1249 (quotation marks omitted).

Neither party challenges the district court's conclusion that the applicable *mens rea* to supervisory liability for Fourth Amendment excessive force is deliberate indifference.[2] "We therefore assume without deciding that deliberate indifference is the applicable state of mind." *Schneider*, 717 F.3d at 769. A "policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id.* (quotation marks omitted). To sustain a claim requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "In most instances," a "pattern of tortious conduct" is required to establish notice. *Barney v. Pulsipher*, 143

---

[2] We apply deliberate indifference to supervisory liability for "Fourteenth Amendment claim[s] involving injuries to an inmate," such as excessive force to pretrial detainees. *See Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019). And at least one of our sister circuits, the Fifth, has held that deliberate indifference applies to supervisory liability for Fourth Amendment excessive force. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 616, 620 (5th Cir. 2018) (applying the deliberate indifference standard to a claim of supervisory liability under the Fourth Amendment where the supervisor ordered his subordinate to tase a fleeing suspect). However, neither the parties nor the district court cited a controlling Tenth Circuit or Supreme Court case holding that deliberate indifference is the requisite *mens rea* for claims of supervisory liability for Fourth Amendment excessive force.

15

F.3d 1299, 1307 (10th Cir. 1998). However, "[i]n a narrow range of circumstances . . . deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at 1307–08 (quoting *Brown*, 520 U.S. at 409; then quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

"Persons sued under § 1983 in their individual capacity may invoke the defense of qualified immunity." *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When properly raised, "this affirmative defense creates a presumption that the defendant is immune from suit." *Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024) (internal quotation marks omitted). Overcoming this presumption requires a plaintiff to show that "(1) the officers' alleged conduct violated a constitutional right, and (2) that right was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Id.* (internal quotation marks omitted). "We review a district court's grant of summary judgment based on qualified immunity de novo." *Id.*

The parties' arguments here concern only the second prong of the qualified immunity analysis. To meet the second prong and show that the law was clearly established, the plaintiff can cite to "either a Supreme Court or Tenth Circuit decision, or

16

the weight of authority from other courts, existing at the time of the alleged violation." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). Clearly establishing a right does not "require a case directly on point," but the precedent "must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In some cases, a "general constitutional rule" may be sufficient when it applies "with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Of course, "some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

In applying qualified immunity to claims of supervisory liability, it is not enough to demonstrate that the subordinate's actions violated clearly established law. *See Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018). Instead, clearly established law must have put the supervisor on notice that his supervisory conduct itself violated the plaintiff's constitutional rights. *Id.* "In other words, [the Estate] must identify a case where an official acting under similar circumstances as [Sheriff Bryant] was held to have violated the Constitution." *See id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

b.      *Analysis*

The Estate concedes that it did not provide "either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation," *T.D.*, 868 F.3d at 1220, establishing that the Mutual Aid Policy

17

violates clearly established rights. Instead, it relies on the proposition that general statements of law may be sufficient to make the law clearly established in some circumstances. However, such "[o]bvious cases are rare and inarguable." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1310 (10th Cir. 2021). For example, the Supreme Court in *Hope v. Pelzer* held that handcuffing a shirtless inmate to a hitching post in the sun for seven hours, without bathroom breaks, and with minimal water, was an "obvious" Eighth Amendment violation. 536 U.S. at 733–35, 738. We have also found obvious constitutional violations, for example, where a prosecutor fabricated evidence, *Truman v. Orem City*, 1 F.4th 1227, 1240 (10th Cir. 2021), and where an off-duty officer followed an individual home and pointed his firearm at the individual for no law enforcement purpose, *Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023).

The implementation of a Mutual Aid Policy, requiring deputies to assist smaller law enforcement agencies, is not one of these rare and inarguable cases for which mere general statements of law are sufficient to make the law clearly established. Sheriff Bryant testified that he knew some Wilson officers were not providing backup when his deputies responded to requests for mutual aid. He likewise testified that he was aware providing aid with a lack of backup "increased the risk to deputies and citizens." App. Vol. IV at 630.

But it is not clear this increased risk was constitutionally impermissible. The Estate points to the established right to be free from excessive force. To hold Sheriff Bryant liable for maintaining the Mutual Aid Policy, however, it must have been clearly established that the risk posed by the Mutual Aid Policy went beyond constitutionally

permissible bounds. Although Sheriff Bryant was aware of increased risks from a lack of backup, no evidence indicates that it was "known or obvious" that his deputies would use excessive force when responding to calls for mutual aid. *See Burke*, 935 F.3d at 997 (quoting *Brown*, 520 U.S. at 410).

Indeed, the Estate has failed to point to a case holding that a policy resulting in a similar risk to arrestees violated constitutional rights. And, in the absence of such case law, it is far from obvious that the risks posed by the Mutual Aid Policy (involving one alleged incident of excessive force) presented an "obvious risk of constitutional harm." *See id.* at 997–98 (quotation marks omitted). Accordingly, the Estate has failed to overcome the presumption that Sheriff Bryant is entitled to qualified immunity for maintaining the Mutual Aid Policy.

**2.     The district court correctly held Sheriff Bryant is entitled to summary judgment on the Estate's municipal liability claim.**

The district court also granted summary judgment and dismissed the claims against Sheriff Bryant in his official capacity based on allegations of an informal policy of excessive force. The court determined that the Estate had failed to show a pattern of violations sufficient to create a triable issue. The Estate argues that the district court erred because its claim does not depend on a pattern of violations. Instead, it maintains that its claim turns on whether Sheriff Bryant ratified Deputy Duggan's conduct. From evidence of post-incident conduct, such as a lack of discipline imposed on Deputy Duggan, the absence of any changed policy, and the failure to provide additional training after the incident, the Estate contends that a reasonable jury could conclude Sheriff Bryant

19

approved of Deputy Duggan's actions. In its reply, the Estate also argues that post-incident ratification can show that conduct was "consistent with existing policy or practice." Reply at 7 (quotation marks omitted).

In making this argument, the Estate mixes two theories of municipal liability: ratification and informal custom. As we explain in detail below, neither theory provides a basis for reversal. The Estate explicitly waived a ratification theory before the district court. And while ratification may be relevant to proving an informal custom, this separate theory nonetheless requires evidence of a widespread pattern of constitutional violations. The Estate has provided no such evidence. Thus, the district court correctly granted summary judgment to Sheriff Bryant on the Estate's claim alleging an informal custom of excessive force.

### a.    Municipal Liability under § 1983

Lawsuits against government employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Municipalities and their government units are "included among those persons to whom § 1983 applies." *Id.* at 690. Accordingly, we treat the claims against Sheriff Bryant in his official capacity as asserting claims against the CCSO.

"'Under § 1983, local governments are responsible only for their *own* illegal acts,' meaning 'they are not vicariously liable for their employees' actions.'" *Manning v. City of Tulsa*, 170 F.4th 1287, 1299 (10th Cir. 2026) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "To establish a claim for damages under § 1983 against municipal entities or

local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Thao v. Grady Cnty. Crim. Just. Auth.*, 159 F.4th 1214, 1227 (10th Cir. 2025) (quotation marks omitted). A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom; (3) "decisions of municipal employees with final policymaking authority"; (4) "ratification by final policymakers of the decisions of subordinates to whom authority was delegated"; or (5) the "deliberately indifferent failure to adequately train or supervise employees." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).

The theories of proving a policy or custom that are relevant to this appeal are ratification and informal custom. "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson v. City of Okla. City*, 627 F.3d 784, 790 (10th Cir. 2010). And for a municipality to be held liable for an informal custom, it must "amoun[t] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 788. (quotation marks omitted).

> b.  *Analysis*

Because the Estate's arguments for municipal liability on appeal concern both ratification and informal custom, we address each theory in turn.

i.        The Estate Waived Its Ratification Theory

As to ratification, the Estate made explicit in its response to Sheriff Bryant's motion for summary judgment that it "did not assert any form or type of . . . *post hoc* ratification." App. Vol. II at 351. Nor did the Estate argue that Sheriff Bryant preapproved the use of excessive force before the incident. Rather, the Estate identified its theory of liability as follows: Sheriff Bryant "enforced an official policy or practice of Carter County" and Deputy "Duggan's actions were consistent with this policy or practice." *Id.* The Estate pointed to post-incident events, such as failure to discipline, and cited ratification cases before the district court. However, it clarified that post-incident events and ratification were offered only to support an inference that Deputy Duggan "acted consistent with the way things are done and have been done in Carter County." *Id.*

When a new legal theory is raised for the first time on appeal, that argument is either forfeited or waived. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011). Where an issue was intentionally abandoned, it is waived, and we refuse to consider it. *Id.* But where the theory simply was not raised, it is forfeited, and we will review it only for plain error. *Id.* at 1128. "[O]ur forfeiture-and-waiver rule applies even when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1306 (10th Cir. 2017) (internal quotation marks omitted).

The Estate explicitly waived any ratification theory of liability before the district court. However, Sheriff Bryant also did not argue on appeal that the ratification theory was waived. Accordingly, we are faced with a problem of "dueling waivers/forfeitures."

22

*See United States v. Williams*, 893 F.3d 696, 701 (10th Cir. 2018). In such a case, we have said that we have discretion to decide whose forfeiture or waiver to overlook. *Id.* "In deciding how to exercise this discretion, we can (1) weigh the harms from each party's failure to adequately present its argument and (2) consider the adequacy of input from the parties." *Id.* Based on the Estate's explicit waiver of ratification before the district court and a lack of clarity surrounding its ratification arguments on appeal, we exercise our discretion to ignore Sheriff Bryant's failure to argue waiver. To the extent that the Estate relies on a ratification theory on appeal, we decline to consider it as waived.

ii.    The Estate's Informal Custom Theory Is Unsupported by the Evidence

To the extent the Estate argues that ratification is evidence that Deputy Duggan's actions were consistent with an informal custom, we see no error in the district court's analysis. Under this theory, the Estate argues a reasonable jury could conclude that the CCSO had an informal custom of allowing excessive force because Sheriff Bryant did not discipline Deputy Duggan, did not change any policy, and did not provide additional training as a result of the incident. The Estate also points to Deputy Duggan's text messages claiming that Sheriff Bryant was "pissed" when Deputy Duggan was asked to resign. App. Vol. II at 364. Finally, the Estate points to the missing text messages from Sheriff Bryant's phone and Deputy Duggan's testimony that he believed his use of a neck restraint was consistent with the policies and practices of the CCSO. He testified that no one had ever told him otherwise.

Even taking this evidence in the light most favorable to the Estate, it is insufficient to establish an informal custom of allowing excessive force. For a municipality to be held liable for an informal custom, it must "amoun[t] to a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788 (quotation marks omitted). We have said that this requires a plaintiff to prove "(1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008).

In *Bryson v. City of Oklahoma City*, we found the evidence insufficient to create a triable issue regarding an informal custom of "encouraging forensic chemists to manipulate evidence in order to obtain convictions." 627 F.3d at 790–91. The evidence included testimony that a particular chemist who worked for the city had a longstanding problem of making subjective statements not supported by science. *Id.* at 790. We found that the evidence, at most, suggested one chemist had consistent problems with inaccurate testimony. *Id.* at 791. Without suggesting that any other city chemists or employees gave inaccurate testimony, the evidence was insufficient to show "an inference of a widespread City practice of fabricating results and concealing evidence that was 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

24

We also concluded in *Parker v. City of Tulsa*, 745 F. App'x 79, 81–84 (10th Cir. 2018) (unpublished),[3] that there was insufficient evidence of "a well-settled practice or custom of ignoring exculpatory evidence" to create a triable issue for municipal liability. Like the Estate in this case, the plaintiff in *Parker* relied on statements by the investigating officer that "he was following [municipal] policies and procedures in this investigation and that no supervisor reprimanded him over this case." *See id.* at 82. We adopted the district court's determination that the evidence at most showed the officer ignored exculpatory evidence on one occasion and did not show the kind of widespread practice necessary for an official custom. *Id.* at 82–83.

Here, the Estate's evidence shows at most a single incident of excessive force against Mr. Lakey. There is no evidence that Deputy Duggan used excessive force on other occasions. Nor is there evidence that other deputies engaged in excessive force such that it amounted to a widespread CCSO practice. And like *Parker*, Deputy Duggan's testimony that he believed he was acting consistently with CCSO policy and that he was not disciplined or reprimanded is insufficient to create a triable issue regarding an informal custom. Although a lack of discipline, lack of other remedial action, or evidence of supervisory support may be relevant to proving the existence of an unofficial policy or custom, municipal liability based on this theory nonetheless requires evidence of "a

---

[3] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

continuing, widespread, and persistent pattern of misconduct."[4] *See Rost*, 511 F.3d at 1125. No such evidence is present here. Accordingly, the district court did not err in granting summary judgment in favor of Sheriff Bryant for the claim alleging an informal custom of allowing excessive force.

### B.    The District Court Did Not Reversibly Err in Excluding Evidence that Deputy Duggan Was Not Criminally Prosecuted

The district court excluded evidence at trial that Deputy Duggan was not criminally charged in connection with Mr. Lakey's death. The court stated that the

---

[4] The Estate cites to several cases in support of the argument that post-incident evidence may be relevant to proving an unofficial policy or custom. However, all the cited cases involving an unofficial policy or custom also involved evidence of multiple constitutional violations. *See Henry v. Cnty. of Shasta*, 132 F.3d 512, 518–19 (9th Cir. 1997) (stating that post-incident evidence was relevant to finding a policy where there was a pattern of violations and the post-incident evidence demonstrated that the city was aware of the constitutional violations); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) ("These complaints include the Debold incident, which, although it occurred after Beck's experience, may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."); *Foley v. City of Lowell*, 948 F.2d 10, 14–15 (1st Cir. 1991) (affirming the admissibility of a similar but subsequent event to prove a policy or custom because "actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident"); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156, 1167 (1st Cir. 1989) (stating that "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right" in a case where there was also evidence of "a longstanding, wide-spread, and facially unconstitutional practice of breaking down doors without a warrant"); *cf. Grandstaff v. City of Borger*, 767 F.2d 161, 171–72 (5th Cir. 1985) (upholding a jury verdict finding municipal liability for an unofficial custom and looking to post-incident evidence of failure to reprimand or make policy changes where the evidence consisted of repeated acts of abuse by several officers on a single night).

evidence was substantially more prejudicial than probative and should be excluded pursuant to Federal Rule of Evidence 403. The Estate argues that evidence Deputy Duggan was not charged would have shown that he resigned only to avoid criminal prosecution, that Sheriff Bryant saw nothing wrong with Deputy Duggan's behavior, and that Sheriff Bryant intended to retain his employment. Instead, the Estate contends exclusion of the evidence created the false impression that Sheriff Bryant approved of Deputy Duggan's resignation. According to the Estate, the evidence would have shown Sheriff Bryant's approval of Deputy Duggan's conduct and been highly probative to the Estate's ratification theory. And the Estate claims the district court did not explain why it excluded the evidence as unfairly prejudicial.

### 1.     Relevant Rules of Evidence

Under the Federal Rules of Evidence, "all relevant evidence is admissible," subject to the limitations provided by the Federal Rules and other laws; any evidence "which is not relevant is not admissible." Fed. R. Evid. 402 advisory committee's notes to proposed rules. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Even if evidence is relevant, it may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest [a] decision on an improper basis, commonly, though not

27

necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note to proposed rules. But "exclusion of evidence under [Rule 403] is an extraordinary remedy that should be used sparingly." *United States v. Butler*, 141 F.4th 1136, 1145 (10th Cir. 2025) (internal quotation marks omitted). Thus, "when conducting Rule 403 balancing, courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.* at 1146 (internal quotation marks omitted).

"[B]ecause district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues," we "give district courts considerable discretion in performing the Rule 403 balancing test." *United States v. Tenorio,* 809 F.3d 1126, 1130 (10th Cir. 2015) (internal quotation marks omitted). Under our abuse of discretion review, "we will not disturb a trial court's decision unless we have a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006) (quotation marks omitted).

2.    **Analysis**

The district court did not explain why it excluded evidence that Deputy Duggan was not charged, stating only that "I think the prejudice of that substantially outweighs its probative value." App. Vol. IV at 621. Failure to adequately explain an evidentiary ruling is an abuse of discretion that may justify remand. *See United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (remanding because the district court failed to explain the basis of its Rule 403 analysis). "In making a discretionary decision, a court must present an explanation for its choice sufficient to enable a reviewing court to determine that it did

not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its discretion." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017) (quotation marks omitted).

Although the district court should have explained why exclusion of the evidence was proper under Rule 403, any error was harmless. Even if evidence was wrongly excluded "we reverse 'only if the error affects a substantial right of the party.'" *Burke*, 935 F.3d at 1011 (quoting Fed. R. Evid. 103(a)); *see* Fed. R. Civ. P. 61 ("[T]he court must disregard all errors and defects that do not affect any party's substantial rights."). "An error affecting a substantial right of a party is an error which had a substantial influence or which leaves one in grave doubt as to whether it had such an effect on the outcome." *McInnis v. Fairfield Cmtys, Inc.*, 458 F.3d 1129, 1142 (10th Cir. 2006) (quotation marks omitted). The burden of showing that the admission or exclusion of evidence affected substantial rights "rests with the party asserting error." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir. 1995) (quotation marks omitted).

The Estate argues that evidence of Deputy Duggan's lack of criminal prosecution was probative of ratification. However, where "the ground on which the evidence was rejected is unsound, the error is harmless if the evidence clearly was inadmissible on some other ground."11 Wright & Miller's Federal Practice & Procedure § 2885 (3d ed. 2012). As explained above, the Estate waived any claim of municipal liability based on ratification. And to the extent that evidence of ratification was relevant to finding an informal custom of excessive force, that claim was properly dismissed on summary judgment for lack of evidence of a pattern of such activity. Thus, the Estate fails to show

29

how the evidence was relevant to the issues before the jury and, consequently, how the evidence was admissible under Rules 401 and 402. Accordingly, we conclude that any error in excluding this evidence did not affect the Estate's substantial rights.

### C.    The District Court Did Not Reversibly Err by Denying Spoliation Sanctions

The district court denied the Estate's motion for spoliation sanctions under Federal Rule of Civil Procedure 37(e) based on Sheriff Bryant's missing cell phone and text messages. The court determined that the Estate had the burden to show it was prejudiced by the lost text messages and that it had failed to do so because it could only speculate concerning the content of those messages. The district court also denied the Estate's request for a default judgment, concluding that Sheriff Bryant lacked an intent to deprive the Estate of evidence and that he was at most negligent in disposing of his phone and failing to preserve the relevant text messages.

The Estate argues that the district court erred by unfairly placing the burden to prove prejudice on the Estate "without considering fairness, the importance of the missing messages, or the culpability of the party who lost the information." Appellant's Br. at 33. These text messages, it maintains, would have been probative of ratification and whether Sheriff Bryant approved of Deputy Duggan's use of force on the night of the incident.

### 1.    Federal Rule of Civil Procedure 37(e)

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of*

*Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (internal quotation marks omitted). Rule 37(e) provides, "[i]f electronically stored information that should have been preserved . . . is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery" the court may, "upon a finding of prejudice to another party from the loss of the information," "order measures no greater than necessary to cure the prejudice." More severe measures such as default judgment or an adverse inference instruction are only available upon a "finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

The advisory committee notes to the 2015 amendments clarify that Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other. . . . and placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. However, in situations where "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties," it may be reasonable to place the burden of prejudice on "the party seeking curative measures." *Id.* "The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id.*

"We view challenges to a district court's discovery sanctions order with a gimlet eye." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011). District courts enjoy "very broad discretion to use sanctions where necessary to [e]nsure that lawyers and parties fulfill their high duty to insure the expeditious and sound management of the

31

preparation of cases for trial." *Id.* (quotation marks omitted). We accordingly review "the district court's decision to impose or deny spoliation sanctions for abuse of discretion." *Turner*, 563 F.3d at 1149–50. "A district court abuses its discretion when it issues an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (internal quotation marks omitted).

**2.    Analysis**

Failure to explain a discretionary decision under the relevant law is a legal error that is an abuse of discretion. *See HCG Platinum, LLC*, 873 F.3d at 1201–02 (concluding that the district court abused its discretion in excluding nondisclosed evidence under Rule 37(c)(1) because it did not explain its decision with reference to the factors that must guide its decision). Under Rule 37(e), the district court had discretion to determine which party should bear the burden of prejudice or lack thereof. But it mistakenly concluded that it must place the burden of proving prejudice on the Estate as the moving party and failed to utilize its discretion using the relevant considerations.

Nevertheless, this error was harmless. "When conducting our harmless error analysis, we review the record as a whole." *United States v. Sarracino*, 340 F.3d 1148, 1171 (10th Cir. 2003) (internal quotation marks). And we may affirm the denial of spoliation sanctions when a review of the record shows that no reasonable finder of fact could conclude that the moving party was prejudiced by the unpreserved evidence. *See Burlington N. & Santa Fe Ry. v. Grant*, 505 F.3d 1013, 1032–33 (10th Cir. 2007) (affirming the district court's denial of spoliation sanctions where "no reasonable finder

32

of fact could determine that Grant was meaningfully prejudiced by BNSF's removal and destruction of portions of the TLM on its property").

On appeal, the Estate argues only that the missing text messages prejudiced its ability to show that Sheriff Bryant approved of, and thereby ratified, Deputy Duggan's conduct. Yet, as described above, the Estate explicitly declined to pursue a ratification theory before the district court.[5] And while evidence of ratification may have supported the Estate's theory of informal custom, evidence of approval alone is insufficient without evidence showing "a continuing, widespread, and persistent pattern of misconduct." *See Rost*, 511 F.3d at 1125. Because the Estate never obtained evidence of other excessive force violations, its informal custom claim would have failed anyway. The Estate, therefore, was not prejudiced by the missing text messages. And any error in assigning the burden to prove prejudice had no impact on the outcome of the Estate's claims.

Furthermore, the only sanction the Estate specifically argued for before the district court was default judgment,[6] which requires a finding of intent to deprive another party of the unpreserved information. Yet the district court found that Sheriff Bryant "did not act in bad faith or intend[ ] to deprive the plaintiff of the data on the phone." App. Vol. II

---

[5] The Estate does not argue that it might have pursued a ratification theory if the missing text messages had been available.

[6] The Estate did include a more extensive list of requested sanctions in the Conclusion section of its Rule 37 brief. However, it did not develop an argument showing its entitlement to such relief before the district court. Nor did it develop such an argument on appeal. We "will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted).

at 436. Instead, the court found that Sheriff Bryant acted merely negligently when he "inadvertently dropped [his phone] in the road" before it was run over and "accidentally destroyed." *Id.* at 436–37.

When reviewing the grant or denial of spoliation sanctions, we "review a district court's finding of bad faith or 'mere negligence' for clear error." *Turner*, 563 F.3d at 1149–50. Under the clear error standard, "we may reverse only if the district court's finding lacks factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred." *Middleton v. Stephenson*, 749 F.3d 1197, 1201 (10th Cir. 2014). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

On appeal, the Estate points to circumstantial evidence that Sheriff Bryant intended to destroy evidence. This includes Sheriff Bryant's receipt of a litigation hold and a notice of a tort claim, informing him that he had a duty to preserve evidence, and the fact that he discarded his phone without first informing his counsel that the phone had been run over. The Estate also argues that Sheriff Bryant's declaration, including his account of his phone's destruction, is "self-serving" and "unsupported." Appellant's Br. at 38. However, "[w]e defer to a district court's credibility determinations when reviewing a district court's findings of fact under a clearly erroneous standard." *United States v. Jordan*, 806 F.3d 1244, 1252 (10th Cir. 2015) (quotation marks omitted). And although

34

the Estate demonstrates that finding an intent to deprive is a permissible view of the evidence, it has not shown that the district court's weighing of the evidence was clearly erroneous. Thus, the district court did not err in concluding that the Estate was not entitled to default judgment.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.